UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Lashonna Alece Wood,<br><br>    Plaintiff,<br><br>    v.<br><br>United Technologies Corporation d/b/a UTC Aerospace Systems,<br><br>    Defendant. | Civil Action No. 5:17-cv-00294-JMC-SVH |

**DEFENDANT'S MEMORANDUM OF LAW IN
SUPPORT OF ITS PARTIAL MOTION TO DISMISS**

Plaintiff Lashonna Alece Wood is a current at-will employee of Defendant. She most recently was employed as an ACE ("Achieving Competitive Excellence") Analyst at Defendant's facility in Bamberg, South Carolina. Plaintiff currently is on an extended leave of absence; the circumstances leading up to and stemming from that leave are at the heart of this lawsuit.

In her Complaint, Plaintiff asserts six separate claims against UTAS: disparate treatment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); disparate impact discrimination under Title VII; retaliation under Title VII; failure to accommodate under the Americans with Disabilities Act of 1973, as amended, 29 U.S.C. § 706, et seq. (the "ADA"); interference under the Family and Medical Leave Act, 29 U.S.C. § 2615(a)(1) (the "FMLA"); and violation of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301 to 4335 ("USERRA"). The allegations in the Complaint, however, are not sufficient to state claims for disparate impact discrimination under Title VII, FMLA interference, or violation of USERRA. Plaintiff appears to have included

these claims merely to add to her already lengthy "kitchen sink" complaint, which consists of more than 100 paragraphs of allegations, including legal conclusions unsupported by any factual allegations and factual allegations that have no bearing on any cognizable claims she has attempted to raise.

Indeed, this is precisely the type of complaint the Supreme Court disallowed in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rather than well-pleaded *factual* allegations that would permit this Court to evaluate her claims, the Complaint is rife with unadorned legal conclusions and bare recitations of legal elements, particularly as to her claims of disparate impact discrimination and violations of the FMLA and USERRA.

Plaintiff faces an insurmountable hurdle because even if her scant factual allegations were true, there is no basis to sustain liability against Defendant on three of her causes of action: (a) Plaintiff's Title VII disparate impact claim fails because she does not identify any specific employment practice that caused racially disparate results and does not allege that any such practice had an adverse impact on anyone but herself; (b) Plaintiff's FMLA interference claim fails because her Complaint contains no specific factual allegations to support Plaintiff's conclusory claim that she was entitled to FMLA leave or that Defendant interfered with her right to FMLA leave in any way; and (c) while the Complaint refers generally to certain protections provided under USERRA, Plaintiff does not allege any facts to demonstrate either that she is entitled to those protections or that Defendant took any adverse action against her that was motivated by her prior military service.  In sum, Plaintiff simply fails to allege facts "plausibly suggesting" entitlement to relief under any of these three theories.  *Twombly*, 550 U.S. at 557.  Instead, Plaintiff's Complaint merely provides "labels," "unadorned" conclusions, and a

"formulaic recitation of the elements" of these claims. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555-56.

For these reasons and as explained in further detail below, the Second, Fifth, and Sixth Causes of Action in Plaintiff's Complaint should be dismissed with prejudice.

## PROCEDURAL HISTORY

Plaintiff filed her Complaint on January 31, 2017. (Doc. No. 1.) Plaintiff sent Defendant a request to waive service of a summons, together with a copy of the complaint, on April 25, 2017. (Doc. No. 6.) Defendant agreed to waive service of the summons. (*Id.*) Defendant is filing its Answer and Affirmative Defenses to Plaintiff's Complaint contemporaneously with the filing of this Motion.

## STATEMENT OF ALLEGED FACTS[1]

Plaintiff is a current employee of Defendant who worked at Defendant's facility in Bamberg, South Carolina. (Compl. ¶¶ 15-16.) Plaintiff is a veteran of the United States Air Force ("USAF"). (Compl. ¶ 11.) After her discharge from the USAF, Plaintiff was employed by The Citadel, The Military College of South Carolina. (Compl. ¶ 13.) Plaintiff began her employment with Defendant in or around August 2013. (Compl. ¶ 15.) Plaintiff initially was employed by Defendant as an Information and Reporting Analyst. (*Id.*) She subsequently

---

[1] Defendant has limited its recitation of the alleged facts to those facts directly bearing on the three claims that are the subject of this Motion. Defendant assumes the factual allegations in Plaintiff's Complaint to be true only for purposes of this Motion. By doing so, Defendant does not admit the truth of these facts or any legal conclusions set out in Plaintiff's Complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (in ruling on motion to dismiss, court accepts all well-pleaded allegations in the complaint as true, but is not required to accept as true the legal conclusions set forth in the complaint). Defendant vigorously denies any wrongdoing and has filed its Answer and Affirmative Defenses to Plaintiff's Complaint contemporaneously with this Motion.

3

moved to a position working under Defendant's ACE program. (Compl. ¶ 16.) Plaintiff remains employed by Defendant. (*Id.*)

During her employment, Plaintiff was enrolled in Defendant's Employee Scholar Program. (Compl. ¶ 34.) Plaintiff claims that at some point after she requested an accommodation for her disability, Defendant told Plaintiff the scholar's program was suspended for the Fall. (Compl. ¶ 35.) Plaintiff alleges that she contacted Defendant's learning and development center as well as the company's corporate headquarters to confirm the program's suspension, but was advised the program was not suspended. (*Id.*) Plaintiff claims that the following Fall, Defendant allowed a younger white female with less experience to participate in the scholars program instead of her. (Compl. ¶ 39.)

Plaintiff suffers from post-traumatic stress disorder, depression, anxiety, and back pain. (Compl. ¶ 14.) On June 10, 2015, Plaintiff requested accommodations for her disabilities, including a laptop to allow her to work from home part-time, the ability to speak with certain employees when she experienced high anxiety, and an ergonomic chair for back support. (Compl. ¶¶ 32, 33.) UTAS responded to Plaintiff's accommodation request in July 2015. (Compl. ¶38.) On or around October 5, 2015, Plaintiff again requested accommodations for her disabilities. (Compl. ¶ 43.) On or around October 28, 2015, Defendant informed Liberty Mutual, its third party administrator for medical leaves, that it could not accommodate Plaintiff's request. (Compl. ¶ 44.)

On or about June 17, 2015, Plaintiff requested intermittent FMLA leave. (Compl. ¶ 36.) Plaintiff claims she only used three days of FMLA leave between June and September 2015. (Compl. ¶ 37.) On or about February 19, 2016, Defendant informed Plaintiff that it was backfilling her position as an ACE Analyst. (Compl. ¶ 47.) On or about June 14, 2016, Plaintiff

4

was informed of her FMLA status and that her FMLA leave had been exhausted. (Comp., ¶ 48.) On or about July 7, 2016, a Liberty Mutual case manager advised Plaintiff about her FMLA leave and eligibility. (Comp., ¶ 49.)

Notwithstanding the forgoing, Plaintiff's Complaint, lacks *factual* allegations on several key points. As to her disparate impact claim, the Complaint does not identify a specific employment practice that allegedly caused racially disparate results. Plaintiff's Complaint also does not contain any allegations regarding a request for FMLA leave after June 17, 2015, any leave taken after September 2015, or any attempt to be reinstated upon returning from FMLA leave. As to Plaintiff's USERRA claim, the only facts alleged in the Complaint to support Plaintiff's USERRA claim are that she served in the USAF and, presumably, was honorably discharged. (Compl. ¶¶ 11, 12.) Plaintiff does not allege any facts whatsoever showing that Plaintiff was denied any benefit of employment based on her military service.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege facts sufficient "to raise a right to relief above the speculative level," thereby nudg[ing] the[] claims across the line from conceivable to plausible." *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (citing *Twombly*, 550 U.S at 555, 570). This plausibility standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In determining whether a complaint meets the plausibility standard, a court must engage in a two-step process. First, the court must identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, at 678. Rather, legal conclusions must be "supported by factual

5

allegations." *Id*., at 679. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Burnette v. Fahey*, 687 F.3d 171, 180 (4th Cir. 2012) (internal quotations omitted) (citing *Iqbal*, 556 U.S. at 678).

## ARGUMENT

**I.    PLAINTIFF HAS NOT ALLEGED FACTS SUFFICIENT TO STATE A TITLE VII DISPARATE IMPACT CLAIM.[2]**

For her second cause of action, Plaintiff alleges generally that "UTC's implementation of their employment policies and procedures had an adverse impact on" her. (Compl. ¶ 61.) Under Title VII, "an unlawful employment practice based on disparate impact is established only if -- a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, [or] . . . sex and the respondent fails to demonstrate that the challenged practice is job related . . . and consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1). Thus, "a plaintiff establishes a prima facie disparate impact claim by showing that the employer uses a particular employment practice that causes a

---

[2] Defendant also notes that Plaintiff did not assert a disparate impact claim in her underlying charge of discrimination. Because Title VII suits are limited to claims encompassed in the EEOC charge, Plaintiff's disparate impact charge should be dismissed on this ground as well. *See Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir.1996) (affirming the district court's dismissal of some of the plaintiff's claims because they were outside the scope of her original EEOC charge), citing *King v. Seaboard Coast Line R.R.*, 538 F.2d 581, 583 (4th Cir.1976) (allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint).

6

disparate impact on one of the prohibited bases." *Lewis v. City of Chicago*, 130 S. Ct. 2191, 2197-98 ((2010) (internal quotation marks and citation omitted). "[A]necdotes suggesting a pattern of discrimination, however, are not enough alone to sustain a disparate impact claim … Disparate impact liability requires the identification of a specific employment practice that caused racially disparate results." *Brown v. Nucor Corp.*, 785 F. 3d 895, 915 (4th Cir. 2015)

In her Complaint, Plaintiff alleges that Defendant's implementation of unspecified "employment policies" resulted in two adverse impacts "against Plaintiff" (and only Plaintiff): being denied the opportunity to participate in UTC's Employee Scholar Program and the denial of her disability accommodations requests. (Compl. ¶ 62.)

The Complaint contains few factual allegations relating to Plaintiff's participation in the Employee Scholars Program ("ESP"). Plaintiff alleges simply that: she was enrolled in the ESP, at one point she was told that the program had been suspended but she later confirmed that was not the case, and a younger white female was allowed to participate in the ESP instead of Plaintiff.[3] (Compl. ¶¶ 34, 35, and 39.) Despite the inference that Plaintiff invites, she does not allege any facts to support her later claim that she was denied the opportunity to participate in the ESP, e.g., that she applied for some benefit under the ESP and that application was denied. In fact, she concedes that she knew the program had not been suspended. (Compl. ¶ 35.) Significantly, Plaintiff does not identify any specific employment practice related to the ESP that caused racially disparate results, nor has she alleged that any such practice affected anyone other than her (i.e., that a certain class of employees was disproportionately and adversely impacted by the challenged practice). She merely alleges that someone else was allowed to participate "instead of" her (a claim Defendant denies).

---

[3] Defendant denies this allegation.

7

Likewise, there are no allegations in the Complaint regarding any specific employment practice that Plaintiff claims led to the alleged denial of her disability accommodation requests. Furthermore, Plaintiff does not allege any facts to show that any such practice caused racially disparate results. As with her claim regarding the ESP, Plaintiff's disparate impact claim regarding disability accommodations focuses entirely on herself and does not identify any specific practice that disproportionately and adversely affected an entire class of employees or otherwise affected anyone other than her.[4]

As pleaded, then, Plaintiff's second cause of action fails entirely to provide the "further factual enhancement" for her disparate impact claims that *Twombly* and *Iqbal* require. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). In reality, Plaintiff's purported disparate impact claims are nothing more than garden-variety disparate treatment claims alleging that Defendant engaged in discrete actions that adversely affected her, and only her. Such allegations are insufficient to state a claim for disparate impact discrimination under Title VII. Plaintiff's "obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In this instance, Plaintiff has not even addressed the material elements necessary to sustain recovery under a disparate impact theory, much less presented any factual allegations to support that theory. Accordingly, her disparate impact discrimination claim should be dismissed.

---

[4] Thus, this claim amounts to nothing more than a restatement of her ADA failure to accommodate claim.

8

## II.     PLAINTIFF HAS NOT ALLEGED FACTS SUFFICIENT TO STATE AN FMLA INTERFERENCE CLAIM.

Under the FMLA, an employee may take up "'to a total of 12 workweeks of leave during any 12-month period' when, inter alia, an employee is burdened with 'a serious health condition that makes the employee unable to perform' [her] job." *Adams v. Anne Arundel County Public Schools*, 789 F.3d 422, 426 (4th Cir. 2015) (quoting 29 U.S.C. § 2612(a)(1)(D)).  In order to establish a claim of FMLA interference, an employee must show that: "(1) [she] is entitled to an FMLA benefit; (2) [her] employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams*, 789 F.3d at 426 (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)).  Even if an employer violates the FMLA, which Defendant adamantly denies doing, there is no relief unless the employee is prejudiced by the violation.  29 U.S.C. §§ 2615, 2617; *Ragsdale*, 535 U.S. at 89; *Moticka v. Weck Closure Sys.*, 183 F. App'x 343, 347 (4th Cir. 2006) ("Before liability will be imposed on an employer for violating an employee's rights under the FMLA, the employee must show that she was prejudiced by the violation.").  Therefore, in order for Plaintiff to state a claim under the FMLA, she must allege both an interference with her FMLA rights and a resulting prejudice.  Plaintiff has failed to alleged any facts to support critical elements of her FMLA interference claim.

In her Complaint, Plaintiff alleges that she requested intermittent FMLA leave on or about June 17, 2015 and that she only used three days of FMLA leave between June and September 2015.  (Compl. ¶¶ 36, 37.)  The only other allegations specifically discussing FMLA leave are: on or about June 14, 2016, Plaintiff was informed of her FMLA status and that her FMLA leave had been exhausted; and on or about July 7, 2016 she was advised about her FMLA leave and eligibility.  (Compl. ¶ 48, 49.)  Although Plaintiff does allege that at some point after September 2015 she was admitted to Regional Medical Center (Compl. ¶ 42), the Complaint

9

Block DocID

contains no further factual allegations regarding that event or any related request for FMLA leave. Plaintiff's only remaining allegations to support her entitlement to FMLA leave are that: she generally was eligible for FMLA leave (Compl. ¶ 85); she suffered from unspecified serious health conditions at unspecified times (Compl. ¶ 88); she requested and took FMLA eligible leave at some unspecified time (Compl. ¶ 89); and that she provided Defendant appropriate notice of her need for FMLA leave (*Id.*). Thus, as an initial matter, the Complaint contains no specific factual allegations to support Plaintiff's conclusory claim that she was entitled to FMLA leave on a particular occasion. Notably, Plaintiff does not allege that Defendant denied her FMLA leave. In fact, in the few allegations regarding FMLA leave, she effectively concedes that she was granted leave when she requested it. (*See* Compl. ¶¶ 36, 37.)

The FMLA regulations issued by the Department of Labor state that the terms "interfering with" an employee's FMLA rights include not only refusing to authorize FMLA leave, but violating the FMLA or its regulations, discouraging an employee from using such leave, and avoiding responsibilities under the FMLA. 29 C.F.R. § 825.220(b). Prejudice can be proven by showing that the employee lost compensation or benefits "by reason of the violation," 29 U.S.C. § 2617(a)(1)(A)(i)(I); sustained other monetary losses "as a direct result of the violation," § 2617(a)(1)(A)(i)(II); or suffered some loss in employment status remediable through "appropriate" equitable relief, such as employment, reinstatement, or promotion, § 2617(a)(1)(B). *Anderson v. Discovery Commc'ns, LLC*, 517 F. App'x 190, 198 (4th Cir. 2013).

Plaintiff alleges in conclusory fashion that Defendant interfered with her FMLA rights by failing to provide various notices required under the Act and by "failing to reinstate her to her employment." (Compl. ¶ 90.) Plaintiff then generally claims that she has suffered lost wages, income, and benefits as a result of Defendant's alleged interference with her FMLA rights. But,

10

Plaintiff does not allege any facts to establish that Defendant's alleged failure to provide the notices in question (which Defendant denies) prejudiced her in any way. Moreover, although Plaintiff asserts in conclusory fashion that Defendant failed to reinstate her to employment, she does not allege any specific facts regarding the circumstances or duration of any FMLA leave she may have requested or taken after September 2015, whether she attempted to return to work before the expiration of any available FMLA leave, or whether she actually was entitled to be reinstated.

To sustain her action, Plaintiff's factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief. *Twombly*, 127 S. Ct. at 1965. Plaintiff's meager allegations concerning her FMLA interference claim do not meet that standard; thus, that claim should be dismissed.

### III.  PLAINTIFF HAS NOT ALLEGED FACTS SUFFICIENT TO STATE A CLAIM UNDER USERRA.

In her Complaint, Plaintiff alleges generally that Defendant violated her rights under USERRA, but she does not specify the specific USERRA provision on which she relies. (Compl. ¶¶ 185-192.) USERRA "prohibit[s] discrimination against persons because of their service in the uniformed services." *Hill v. Michelin N. Am., Inc.*, 252 F.3d 307, 311 (4th Cir. 2001) (quoting 38 U.S.C. § 4301(a)(3)). Four sections of USERRA outline its framework: 4311, 4312, 4313, and 4316.

Section 4311 prohibits an employer from discriminating against an employee who "is a member of … has performed … or has an obligation to perform service in a uniformed service." § 4311(a). Section 4311 applies after a veteran is reemployed following deployment. *See Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 304 (4th Cir. 2006). This section prohibits discrimination because of an employee's service at the "initial employment,

11

reemployment, [and] retention in employment" stages of a veteran's employment, as well as to "promotion, or any benefit of employment." § 4311(a).

Sections 4312 and 4313 protect employees returning from uniformed service and seeking reemployment. *See Petty v. Metro. Gov't of Nashville-Davidson Cty.*, 538 F.3d 431, 439-440 (6th Cir. 2008) (citation omitted). Section 4312 guarantees returning veterans a right of reemployment after military service when they return under certain circumstances. *See* § 4312(a)(1)-(3). If a veteran satisfies the criteria, then Section 4313 sets forth the returning service member's rights under Section 4312 — namely, the specific position to which veterans are entitled upon their return. *See* § 4313(a)(1)-(4).

Finally, Section 4316 addresses certain other rights, benefits, and obligations of persons absent from employment for service in a uniformed service. *See Petty*, 538 F.3d at 440 (citations omitted). Among other things, Section 4316 prevents employers from firing without cause any returning veterans within either 180 days or one year of reemployment, depending on the length of service. *See* § 4316(c)(1)-(2).

Other than the general allegation of discrimination in employment, each of the alleged violations cited in Plaintiff's sixth cause of action (violation of USERRA) refers to a right of an employee seeking reemployment, or reemployed, upon returning from service in the uniformed services. (*See* Compl. ¶¶ 186, 190.) Yet, the Complaint contains no factual allegations that Plaintiff ever was absent from her employment with Defendant by reason of service in the uniformed services nor that she sought, or that Defendant denied her, reemployment or any other rights provided under USERRA to a veteran upon an eligible return from service. In that regard, the Complaint conveniently omits any allegations directly establishing Plaintiff's period of service. Plaintiff does allege, however, that: she is a veteran of the USAF; her discharge records

12

reflect honorable service; following her service in the USAF, she was employed at The Citadel; and in August 2013 she began working at UTAS. (Compl. ¶¶ 11-13, 15.) Thus, the few allegations bearing on Plaintiff's veteran status lead to the conclusion that Plaintiff left the uniformed service long before her employment by Defendant and, furthermore, that during her employment with Defendant, Plaintiff was not actively serving in the uniformed services, was not under any obligation to serve, and did not return from service so as to fall within the provisions of USERRA. Accordingly, the reemployment-related protections of Sections 4312, 4313, and 4316 do not apply to Plaintiff.

That leaves only the non-discrimination provisions of Section 4311 as a possible basis for Plaintiff's USERRA claim. But, Plaintiff does not allege any facts to support such a claim. "In a USERRA case, 'there must be an initial showing by the employee that military status was at least a motivating or substantial factor in the [employer's] action.'" *Bunting v. Town of Ocean City,* 409 F.App'x 693, 695 (4th Cir. 2011) (*quoting Sheehan v. Dep't of the Navy,* 240 F.3d 1009, 1014 (Fed.Cir. 2001)). The Complaint is devoid of any factual allegations that Defendant took any action regarding Plaintiff that was motivated by her military status. For that matter, other than her allegations regarding her service in the USAF, the Complaint contains no factual allegations whatsoever relating to Plaintiff's military service or any purported discrimination based on such service. In attempting to state a cause of action under USERRA, Plaintiff merely alleges, in purely conclusory fashion, that Defendant violated her rights under USERRA. And, while Plaintiff refers generally to certain protections provided under USERRA, she does not allege any facts to demonstrate either that she is entitled to those protections or that Defendant took any adverse action against her in which her past performance of uniformed service was a motivating factor.

13

In sum, the most that can be said about Plaintiff's USERRA claim is that it merely presents a rote, conclusory, and "formulaic recitation of the elements" of a USERRA claim — a pleading tactic that falls woefully short in satisfying *Twombly* and *Iqbal*.  Without any factual allegations to support her conclusions, though, Plaintiff's "formulaic recitation of the elements of [her] cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Absent any facts showing how her USERRA is more than "speculative," Plaintiff's claim is merely an impermissible and "unadorned, the defendant-unlawfully-harmed-me accusation." *Id.*  Plaintiff thus completely fails to state a plausible claim for relief, and the Court should dismiss her USERRA claim. *Id.* ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.").

## **CONCLUSION**

For the reasons stated above, the Court should dismiss Plaintiff's claims for disparate impact discrimination under Title VII, FMLA interference, and violations of USERRA, with prejudice.

*(signature page to follow)*

                    Respectfully submitted,

                    SWEENY WINGATE & BARROW, P.A.

                    By: s/William O. Sweeny, III
                        William O. Sweeny III
                        Federal ID 4405
                        wos@swblaw.com
                        SWEENY WINGATE & BARROW, P.A.
                        1515 Lady Street (29201), P.O. Box 12129
                        Columbia, SC 29211
                        Telephone:	(803) 256-2233
                        Facsimile:	(803) 256-9177

                        Thomas G. Reynolds IV
                        Georgia Bar 601898, *pro hac vice*
                        forthcoming
                        treynolds@seyfarth.com
                        SEYFARTH SHAW LLP
                        1075 Peachtree Street, N.E., Suite 2500
                        Atlanta, GA  30309-3958
                        Telephone:	(404) 885-1500
                        Facsimile:	(404) 892-7056

DATED:  June 26, 2017                        Attorneys for Defendant

# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

| | |
|---|---|
| Lashonna Alece Wood,<br><br>        Plaintiff,<br><br>    v.<br><br>United Technologies Corporation d/b/a UTC Aerospace Systems,<br><br>        Defendant. | Civil Action No. 5:17-cv-00294-JMC-SVH |

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2017, I filed the foregoing DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS with the Clerk of Court using the CM/ECF system, which will automatically send electronic notification of such filing to the following attorney of record:

> Joseph D. Dickey
> 1817 Hampton Street
> Columbia, South Carolina 29201
> joseph@dickeylawsc.com

                                        */s/ William O. Sweeny III*
                                        William O. Sweeny III